

# NUMBER 13-14-00574-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**SEBASTIAN COTTON & GRAIN, LTD.,**                          **Appellant,**

**v.**

**WILLACY COUNTY APPRAISAL DISTRICT,**                          **Appellee.**

## On appeal from the 197th District Court
## of Willacy County, Texas.

# OPINION ON REMAND

**Before Chief Justice Contreras and Justices Longoria and Perkes**
**Opinion on Remand by Justice Perkes[1]**

This property-tax dispute has been remanded to us by the Supreme Court of Texas

to decide the following issues:  (1) whether appellant, Sebastian Cotton & Grain, Ltd.

---

[1] The Honorable Nelda V. Rodriguez, former Justice of this Court, did not participate in this opinion on remand because her term of office expired on December 31, 2018, and she was replaced on panel by Justice Gregory T. Perkes in accordance with the appellate rules.  *See* TEX. R. APP. P. 41.1(a).

(Sebastian), was the owner of the subject property; (2) if so, whether Sebastian was quasi-estopped from entering an agreement pursuant to tax code § 1.111(e) with appellee, Willacy County Appraisal District (WCAD); and (3) if not, whether the trial court's finding that Sebastian fraudulently induced WCAD into entering the agreement was supported by factually and legally sufficient evidence. *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 48, 52 (Tex. 2018). Because we find that Sebastian was the owner of the grain, and thus estopped from entering a contrary agreement under § 1.111(e), we affirm.

## I. BACKGROUND[2]

Sebastian rendered to WCAD its entire grain inventory as of January 1, 2009. *See generally* TEX. TAX CODE ANN. § 22.01(a) (West, Westlaw through 2017 1st C.S.) (requiring a property owner to declare, or "render," to the appraisal district, "all tangible personal property used for the production of income that the person owns . . . on January 1" so that the property may be taxed). After Sebastian applied for and was denied an exemption on a portion of the inventory, it filed a motion to correct ownership under § 25.25(c) of the Property Tax Code, alleging that it actually sold 86% of the rendered grain to DeBruce Grain, Inc. (DeBruce) in 2008.

To support its position, Sebastian produced four sales contracts between Sebastian and DeBruce, providing for the sale of a total of 1.34 million bushels of grain. Each contract was executed in 2008 and provided for shipment in 2008. Through its representations to the chief appraiser, Sebastian implied that possession of the grain on

---

[2] The facts are well-known to the parties and the supreme court's opinion includes a comprehensive background. *See Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 34–37 (Tex. 2018). The background provided here is limited to the facts necessary to explain our disposition. *See* TEX. R. APP. P.47.1.

January 1, 2009 was immaterial because ownership immediately transferred in 2008 upon execution of the contracts.[3] In a phone conversation with Sebastian's property tax agent, the chief appraiser agreed to change the appraisal roll to reflect DeBruce as the owner. Consequently, Sebastian was issued a tax refund.

DeBruce protested the corrected appraisal roll and resulting tax assessment, also asserting non-ownership. DeBruce pointed to a provision in the contracts expressing the parties' intent to resolve any disputes under the National Grain and Feed Association Rules (NGFA Rules). Rule 6 of the NGFA Rules provides that title and risk of loss transfer to the buyer at either the time of shipment or delivery, depending on the specific term in the contract, but not before. DeBruce provided WCAD with proof that, of the 1.34 million total bushels contracted for, only 138,300 had been shipped or delivered by January 1, 2009; some were shipped and delivered after January 1; and 808,797 bushels were never shipped or delivered. DeBruce acknowledged liability for the 138,300 bushels and disputed the rest. The chief appraiser agreed, changing the appraisal rolls again to reflect Sebastian as the owner of the remaining grain.

Sebastian protested to the Willacy County Appraisal Review Board (ARB). The ARB upheld the change to the appraisal roll and Sebastian sought judicial review, arguing: (1) WCAD was prohibited by statute from changing the appraisal roll because it increased Sebastian's tax liability; or (2) in the alternative, the phone conversation in

---

[3] Sebastian argued it was only a warehouseman for the grain on January 1, 2009. We note that a Rendition of Taxable Personal Property requires the taxpayer to report any property it is holding as a fiduciary and to identify the owner. TEX. TAX CODE ANN. § 22.01(a) (West, Westlaw through 2017 1st C.S.). Additionally, "a person shall file a report listing the name and address of each owner of property that is in his possession or under his management on January 1 by bailment." *Id.* § 22.04(a) (West, Westlaw through 2017 1st C.S.). Contrary to its subsequent position, Sebastian did not follow either of these provisions, rendering all the grain in its possession on January 1.

3

which the chief appraiser agreed to change the ownership to DeBruce was a final, nonreviewable agreement under § 1.111(e) of the Property Tax Code. *See id.* § 1.111(e) (West, Westlaw through 2017 1st C.S.) (providing that "[a]n agreement between a property owner or owner's agent and the chief appraiser is final if the agreement relates to a matter . . . which may be corrected under Section 25.25 or on which a motion for correction under that section has been filed but not determined by the [ARB]").

WCAD argued the ownership change was authorized and raised fraud as an affirmative defense to its agreement with Sebastian. The case was tried to the bench and the district court rendered a take nothing judgment against Sebastian, finding WCAD was authorized to make the ownership change and the agreement should be set aside because it was induced by fraud.

On appeal to this Court, Sebastian again challenged WCAD's statutory authority to make the ownership change, as well as the factual and legal sufficiency of the evidence to support the trial court's fraud determination. We reversed the trial court on the authority issue without reaching Sebastian's sufficiency challenge. The Supreme Court of Texas granted WCAD's petition for review and reversed, holding WCAD acted within its authority. *Sebastian Cotton & Grain*, 555 S.W.3d at 54. The supreme court remanded the case to this Court to first determine the issue of ownership, and then to determine the propriety of Sebastian's agreement with WCAD under § 1.111(e). *Id.*

## II. OWNERSHIP

"[P]roperty taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed." TEX. TAX CODE ANN.

4

§ 32.07(a) (West, Westlaw through 2017 1st C.S.). The trial court determined Sebastian was the owner of the grain in its possession on January 1, 2009.[4] We agree.

Ownership is a legal question based on determined facts. *Sebastian Cotton & Grain*, 555 S.W.3d at 46 & n.12 (citing *Hudson Buick, Pontiac, GMC Truck Co., v. Gooch*, 7 S.W.3d 191, 195–96 (Tex. App.—Tyler 1999, pet. denied)). The material facts in this case are undisputed. Instead, both parties point us to the purchase contracts and the NFGA Rules incorporated into those contracts to support their respective positions on ownership.[5] Interpretation of an unambiguous agreement is a question of law we review de novo. *AEP Tex. Cent. Co. v. Pub. Util. Comm'n*, 286 S.W.3d 450, 464 (Tex. App.—Corpus Christi 2009, pet. denied) (citing *Weslaco Fed'n of Teachers v. Tex. Educ. Agency*, 27 S.W.3d 258, 263–64 (Tex. App.—Austin 2000, no pet.)).

At the outset, this Court notes that each of the four purchase contracts resembles an option agreement, which is defined as "[t]he right (but not the obligation) to buy or sell a given quantity of securities, commodities, or other assets at a fixed price within a specified time." *Option agreement*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Jarvis v. Peltier*, 400 S.W.3d 644, 650 (Tex. App.—Tyler 2013, pet. denied). Each contract provided a fixed price point per bushel, a specific shipment period, and that

---

[4] "The district court shall try all issues of fact and law raised by the pleadings in the manner applicable to civil suits generally." TEX. TAX CODE ANN. § 42.23(a) (West, Westlaw through 2017 1st C.S.).

[5] Neither party has argued in the trial court or this Court that the purchase contracts or NFGA Rules are ambiguous. Although the parties interpret the provisions differently, "[a] contract is not ambiguous merely because the parties disagree." *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 787 (Tex. 2017)). Contract ambiguity is a question of law, *id.* (citing *Samson Expl.*, 521 S.W.3d at 787), and we find the purchase contracts and the incorporated NFGA Rules to be unambiguous because they are subject to only one genuine meaning. *See Nassar v. Liberty Mutual Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017) (per curium) (citing *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015)).

payment would be due after delivery. According to the testimony of Sebastian's owner Terry Funk, it is not uncommon in the grain industry for buyers like DeBruce to cancel orders; a buyer's only obligation upon cancelation is to pay the difference, if any, between the contract price and the market price at the time of cancelation, as well as any accrued storage fees. It is undisputed that DeBruce canceled its purchase of 808,797 bushels; i.e., DeBruce never took possession of or paid for the majority of the 1.34 million bushels. We reject, therefore, Sebastian's argument that execution of the four contracts immediately transferred ownership in the 1.34 million bushels when DeBruce was under no obligation to complete the transactions.

Moreover, we are guided by the plain language of the contracts and the NGFA Rules. Each purchase contract contained the same provision: "Any dispute under this agreement shall be resolved under the rules of the Kansas City Board of Trade or the National Grain and Feed Association." Rule 6 of the NGFA Rules provides that title and risk of loss transfer to the buyer at the time of shipment or delivery, but not sooner:

> Title, as well as risk of loss and/or damage, passes to the Buyer as follows: (A) On f.o.b. origin or f.o.b. basing point contracts, at the time and place of shipment. The time of shipment is the moment that the carrier accepts the appropriate shipping document. . . . (B) On delivered contracts: . . . By truck, upon arrival at the Buyer's final destination.

NAT'L GRAIN & FEED ASS'N, NGFA GRAIN TRADE RULES, Rule 6 (2018).[6] It is undisputed that, as of January 1, 2009, only 138,300 bushels had been shipped or delivered to DeBruce. We conclude, then, that under the NGFA Rules, Sebastian was the legal title holder of all the grain in its possession on January 1.

---

[6] Neither party presented the trial court with the rules of the Kansas City Board of Trade and Sebastian never argued they conflict with Rule 6 of the NGFA Rules.

The term "ownership" is not defined by the Property Tax Code. *See* TEX. TAX. CODE ANN. § 1.04 (West, Westlaw through 2017 1st C.S.). But "[t]he person having legal title to property is generally considered to be the owner thereof for purposes of taxation." *Childress Cty. v. State*, 127 Tex. 343, 349, 92 S.W.2d 1011, 1015 (1936). Sebastian has failed to provide us with a principled reason to deviate from this general rule of law.

We are also not persuaded by Sebastian's argument that ownership and legal title are not mutually inclusive. Read in context, the term "title" in Rule 6 was intended to be synonymous with ownership. *See Columbia Gas Transmission Corp. v. New ULM Gas, Ltd.*, 940 S.W.2d 587, 591 (Tex. 1996) ("In determining the parties' agreement, [courts] are to examine all parts of the contract and the circumstances surrounding the formulation of the contract.") (citing *National Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995) (per curium)). Otherwise, a buyer would be the owner upon execution of a purchase contract, with all the attendant rights and obligations of ownership, yet legal title would not pass until shipment or delivery—if either occurs at all. The only reasonable interpretation of Rule 6 is that it delineates the point at which ownership transfers from the seller to the buyer.[7]

Finally, Sebastian argues in the alternative that DeBruce was at least the equitable title holder of the disputed grain. It relies on *AHF-Arbors at Huntsville I, LLC v. Walker County Appraisal District*, 410 S.W.3d 831 (Tex. 2012) for the proposition that equitable title, as opposed to legal title, is sufficient to establish ownership for tax purposes.

---

[7] Of course, as the preamble to the NFGA Rules makes clear, the parties were free to contract for different terms. NAT'L GRAIN & FEED ASS'N, NGFA GRAIN TRADE RULES, Preamble (2018). In other words, if Sebastian and DeBruce wanted to transfer legal title upon execution of the contracts, they were free to include such a term in the contracts. But because they have failed to express a clear intent otherwise, Rule 6 controls.

Equitable title is defined as "the present right to demand legal title." *Id.* at 837 (citing *Carmichael v. Delta Drilling Co.*, 243 S.W.2d 458, 460 (Tex. Civ. App.—Texarkana 1951, writ ref'd)). Even if we assume, without deciding, that DeBruce held equitable title in the undelivered grain on January 1, 2009, we are not persuaded that an equitable title holder should be assessed a tax liability over the legal title holder.

We find *AHF-Arbors* to be distinguishable from this case in several material ways, and therefore decline to deviate from the general rule that legal title establishes ownership for tax purposes. *See Childress Cty.*, 127 Tex. At 349, 92 S.W.2d at 1015. Most notably, *AHF-Arbors* concerned a tax exemption, not a tax liability, and thus required interpretation of a different provision in the Property Tax Code with distinct policy concerns. *AHF-Arbors*, 410 S.W.3d at 836–39 (interpreting § 11.182(b), not § 32.07(a), and noting the social benefit of encouraging private investment in public housing). Additionally, *AHF-Arbors* involved a nonprofit corporation imputing its status to its wholly-owned and controlled subsidiary. *Id.* at 839. In this case, there is a dispute between two purported owners, one of which must be personally obligated to pay the tax liability. *See* TEX. TAX CODE ANN. § 32.07(a).

To that end, we find *Bailey v. Cherokee County Appraisal District*, 862 S.W.2d 581 (Tex. 1993) to be more analogous to this case. In a dispute over whether the equitable title holder or the legal title holder owed the tax liability, the Supreme Court of Texas held that, "[w]hile it is true that the heirs hold equitable title to estate property, this interest does not give rise to tax liability. The responsibility for taxes lies with the administrator as holder of legal title." *Id.* at 584. We conclude that, as the legal title holder of the grain

8

in its possession on January 1, 2009, Sebastian was the actual owner for purposes of taxation.

### III. ESTOPPEL

Sebastian argues that, even if it is the owner, its agreement with WCAD to resolve its motion to correct ownership constituted a final, nonreviewable agreement under § 1.111(e) of the Property Tax Code. *See* TEX. TAX. CODE ANN. § 1.111(e) (providing that "[a]n agreement between a property owner or owner's agent and the chief appraiser is final if the agreement relates to a matter . . . which may be corrected under Section 25.25 or on which a motion for correction under that section has been filed but not determined by the board"); *see also Sebastian Cotton & Grain*, 555 S.W.3d at 47-48 ("[T]he oral agreement between the parties in this case may be sufficient to establish a section 1.111(e) agreement, assuming the agreement was made by a proper party."). In effect, Sebastian seeks to set aside WCAD's ownership change to the appraisal roll as a violation of their prior agreement.

A taxpayer relying on the finality of a § 1.111(e) agreement must first establish the agreement's validity. *Sebastian Cotton & Grain*, 555 S.W.3d at 47. Whether an agreement is valid and enforceable is generally a question of law we review de novo. *See Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi 2004, no pet.) (citing *Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 678 (Tex. App.—Houston [1st Dist.] 1996, no writ)).

The plain language of § 1.111(e) limits its application to an agreement between the chief appraiser and "a property owner or the owner's agent." TEX. TAX CODE ANN. § 1.111(e). Although we have determined Sebastian to be the actual owner of the grain

9

in its possession on January 1, and thus the proper party to enter a section 1.111(e) agreement, our inquiry does not end there. The supreme court instructed us to consider "whether estoppel or quasi-estoppel may preclude Sebastian from entering into an agreement under section 1.111(e) based on its representation that it was not the property owner." *Sebastian Cotton & Grain*, 555 S.W.3d at 48.

But before turning to this question, we are guided by the supreme court's holding that an agreement under § 1.111(e) cannot resolve ownership as a legal matter because a chief appraiser does not have the authority to make such a determination. *Id.* at 49. As the supreme court explained, "liability arises out of actual property ownership, not the appraisal roll and tax roll reflection of ownership. . . . Simply put, tax liability exists independently of the appraisal roll or tax bill." *Id.* at 45.

The substance of Sebastian's agreement with WCAD was the resolution of Sebastian's motion to correct ownership, but that "correction did not determine actual ownership as a legal matter." *Id.* at 49. Instead, we have determined ownership in this opinion, and our holding means Sebastian was the owner on January 1, 2009, long before its agreement with WCAD. *Id.* at 45 ("[U]nder the Property Tax Code, WCAD's correction had no effect on tax liability—if Sebastian was indeed the owner on January 1, Sebastian was liable for property taxes regardless of whose name appeared on the appraisal roll or the tax bill."). Because Sebastian was the owner of the disputed grain on January 1, 2009, we proceed to examine "whether estoppel or quasi-estoppel may *preclude Sebastian from entering* into an agreement under section 1.111(e) based on its representation that it was not the property owner." *Id.* at 48 (emphasis added).

10

"Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken.   The doctrine apples when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit."   *Id.* at 48 (quoting *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 778 (Tex. 2017)).

In this case, Sebastian must now rely on its actual ownership to establish its right to enforce the finality of its agreement with WCAD under § 1.111(e).   *See* TEX. TAX. CODE ANN. § 1.111(e); *Sebastian Cotton & Grain*, 555 S.W.3d at 48 ("It should go without saying that if Sebastian was not the property owner, then it, by definition, lacked the authority to make an agreement under section 1.111(e).   To be clear, nothing in the statute or our public policy prevents a non-owner of property from agreeing with the chief appraiser to change the appraisal rolls to reflect that the non-owner in fact does not own the property. However, such an agreement would not arise under section 1.111(e), and therefore would be subject to review by the ARB or a judicial body.").   The assertion of this right is wholly inconsistent with its prior position—that it was not the owner.   For example, in the lead-up to the agreement, Sebastian's tax agent stated in an email to WCAD's chief appraiser that "Sebastian Grain did not own most of the inventory on January 1."   Sebastian's assertion of its right to finality under § 1.111(e) is to the detriment of WCAD and the taxing authorities because, if the agreement is valid and enforceable, the grain will escape taxation.   And Sebastian accepted the benefit of resolving its motion to correct ownership based on its assertion of non-ownership.   It would be unconscionable to allow Sebastian to now rely on its actual ownership to enforce that agreement when "the very nature of

11

the agreement was to establish that Sebastian was *not* the owner of the grain."

*Sebastian Cotton & Grain*, 555 S.W.3d at 48; *see Samson Expl., LLC*, 521 S.W.3d at 778.

Because WCAD established Sebastian's ownership as a legal matter, Sebastian was precluded from taking the position that its agreement with WCAD was a final, nonreviewable agreement under § 1.111(e). Because this issue is dispositive, we do not reach Sebastian's sufficiency of the evidence issue regarding fraud. *See* TEX. R. APP. P. 47.1.

## IV. CONCLUSION

The trial court's judgment is affirmed.

GREGORY T. PERKES
Justice

Delivered and filed the
18th day of April, 2019.

12